PEABODY v DIMEGLIO

Docket No. 315319. Submitted June 4, 2014, at Lansing. Decided August 12, 2014, at 9:10 a.m.

Dany Jo Peabody filed a complaint in the Eaton County Probate Court against Marta DiMeglio, individually and as the personal representative of the estate of Paul J. DiMeglio, after Marta denied Peabody's claims against the estate. Peabody and Paul had been married in 1989 and divorced in 1995. They entered into a property settlement agreement, which was incorporated, but not merged, into a Virginia divorce judgment by express language. The relevant portion of the agreement concerned a parcel of property located in Colorado. It provided (1) that the property would continue to be investment property, (2) that it would remain in Peabody's name, (3) that Paul would indemnify Peabody from any liability arising out of the property, (4) that he would make the mortgage payments, (5) that Peabody could not sell the property, (6) that Peabody had a right of first refusal if Paul did, and (7) that the proceeds would be split equally between the parties upon sale. After Paul missed several mortgage payments in 1997, Peabody executed a quitclaim deed conveying her entire interest in the property to Paul in order to avoid financial responsibility for the property and allow him to refinance. Paul further encumbered the property with mortgage debt in 2000 and eventually conveyed his entire interest in the property to Marta, who was his new wife, by means of two quitclaim deeds executed in 2003 and 2004. Marta conveyed the property to a third-party buyer the same day and used the proceeds from the sale for a like-kind exchange under 26 USC 1031 of the Internal Revenue Code in which she purchased property in Michigan. Peabody's complaint in the probate court action alleged breach of contract, breach of a covenant of good faith and fair dealing, conversion, statutory conversion, concert of action, fraud, and unjust enrichment and sought enforcement of the Virginia divorce judgment. Marta moved for summary disposition under MCR 2.116(C)(7), (8), and (10). The court, Thomas K. Byerley, J., granted summary disposition under MCR 2.116(C)(8) and (10) to Marta in her individual capacity because she was not a party to the property settlement agreement and had no personal liability for any of the claims. The court further granted summary

disposition under MCR 2.116(C)(7) to Marta in both capacities, concluding that the six-year statutory period of limitations for contract claims had run. Peabody appealed, specifically contesting the court's finding that the statute of limitations for contract claims barred her claims for enforcement of the divorce judgment and unjust enrichment, and Marta cross-appealed the denial of her motion for attorney fees.

The Court of Appeals *held*:

1. Peabody argued that Virginia substantive law regarding the incorporation of property settlements should apply because the judgment was a Virginia divorce judgment that provided for incorporation by reference. MCL 691.1173 (part of the Uniform Enforcement of Foreign Judgments Act), however, authorizes the filing of a copy of an authenticated foreign judgment in certain courts of this state and further provides that a judgment filed in that manner has the same effect and is subject to the same procedures, defenses, and proceedings as a judgment of a Michigan court and may be enforced or satisfied in the same manner. Because the divorce judgment was filed in accordance with the act, it was treated as a Michigan judgment and Michigan law applied to its enforcement.

2. The probate court erred by applying the 6-year period of limitations of MCL 600. 5807(8) for breach-of-contract claims to Peabody's action to enforce the divorce judgment rather than the 10-year period of limitations of MCL 600.5809(3) for noncontractual money obligations founded on a judgment. "Incorporation by reference" refers to making a secondary document a part of the primary document by stating in the primary document that the secondary document should be treated the same as if it were contained in the primary one. Merger, in the context of this case, is the absorption of a contract into a court order so that the agreement loses any separate identity as an enforceable contract. When the parties to a divorce agree to incorporate the terms of a property settlement agreement by reference and specifically agree not to merge the agreement into a judgment, their clear intent is to make the agreement enforceable both as a court order and as an ordinary contract. Given that the property settlement agreement was incorporated, rather than merged, into the divorce judgment, it was enforceable as a judgment to which the 10-year limitations period applied. Because Peabody sought enforcement of the provision requiring Paul to pay her half of the property sale proceeds, her cause of action for that claim accrued in 2004 when Paul sold the property and did not pay Peabody half of the proceeds. Therefore, Peabody timely filed her complaint in 2012.

3. The probate court also erred by granting summary disposition to Marta on Peabody's claim of unjust enrichment. The law implies a contract in order to prevent unjust enrichment, but not if there is already an express contract on the same subject matter. Peabody, however, alleged more than a breach of contract in her unjust-enrichment claim, asserting not only that the estate owed her for Paul's breach, but that Marta was unjustly enriched when she retained the funds from the sale of the property. That was a purely equitable claim not covered by any express contract of the parties. Because the claim was not based on an analogous legal claim, the statute of limitations for breach of contract did not apply, and the claim for unjust enrichment would instead be time-barred, if at all, under the equitable doctrine of laches. On remand, the probate court was directed to determine whether laches barred Peabody's claim for unjust enrichment.

4. The probate court's interpretation of the language in the property settlement agreement that provided for attorney fees was overly narrow. A contract provision providing for attorney fees is a valid exception to the American rule regarding attorney fees, and a commonsense reading of the relevant provisions of the property settlement agreement was that the reasonable costs incurred by a party in the successful defense to any action for enforcement of any of the agreements between the parties would include attorney fees regardless of which party prevailed. Given the disposition of Peabody's appeal, however, Marta no longer had a successful defense within the meaning of the contractual language unless the probate court were to find in her favor on the merits on remand.

Reversed and remanded.

DIVORCE — JUDGMENTS — PROPERTY SETTLEMENTS — INCORPORATION BY REFERENCE — ENFORCEMENT — STATUTES OF LIMITATIONS.

Incorporation by reference refers to making a secondary document a part of the primary document by stating in the primary document that the secondary document should be treated the same as if it were contained in the primary one; merger of documents is the absorption of a contract into a court order so that the agreement loses any separate identity as an enforceable contract; parties to a divorce who agree to incorporate the terms of a property settlement agreement by reference and specifically agree not to merge the agreement into a divorce judgment make that agreement enforceable both as a court order and as an ordinary contract, and it is accordingly enforceable as a judgment with a 10-year limitations period under MCL 600.5809(3) for noncontractual money obligations founded on a judgment.

*Ligon Law Office* (by *M. Jean Ligon* and *Paul S. Vaidya*) for Dany Jo Peabody.

*The Gallagher Law Firm, PLC* (by *Craig S. Girard* and *Jennifer M. Tichelaar*), for Marta DiMeglio.

Before: CAVANAGH, P.J., and OWENS and STEPHENS, JJ.

PER CURIAM. Plaintiff, Dany Jo Peabody, appeals as of right the probate court's order granting summary disposition for defendant, Marta DiMeglio, in her individual and representative capacities, pursuant to MCR 2.116(C)(7), based on the expiration of the six-year statutory period of limitations for breach-of-contract claims. Defendant cross-appeals the probate court's order denying her motion for attorney fees. We reverse the probate court's grant of summary disposition and remand for further proceedings.

Plaintiff and Paul DiMeglio (the decedent) were married in 1989 and divorced in 1995. As part of the divorce, plaintiff and the decedent entered into a property settlement agreement, which was incorporated, but not merged, into a Virginia divorce judgment by express language to that effect on December 15, 1995. The portion of the agreement relevant to this appeal deals with a piece of real property located in Colorado (the Colorado property). Paragraph 16(B)(2) of the agreement states, "The Husband specifically agrees that he shall be responsible for and shall indemnify the Wife from any liability whatsoever arising out of the . . . Colorado Mortgage . . . ." Paragraph 19(B) of the agreement states:

> The parties agree that Wife is the sole owner of a property located at 1222 Colorado Boulevard, Idaho Springs, Colorado, in which the Husband has an investment interest. The parties further agree that:

(1) Said Colorado residence shall remain as an investment property.

(2) Wife shall not sell, deed over or otherwise dispose of said property in any manner.

(3) Neither party shall encumber said property by subsequent mortgages, equity loans or any other means without the written agreement of the other.

(4) Husband shall be responsible for all mortgage payments on said property even though the mortgage loan on said property is in the name of the Wife.

*  *  *

(7) Husband has the sole and separate right and option to sell said property at any time of his choosing. Wife shall have the right of first refusal to purchase said property incident to any such sale.

(8) If said property is sold, all net proceeds of sale after customary costs of sale, such as the real estate commission, closing costs, mortgage pay-off and capital gains tax responsibilities, etc., shall be divided equally between the parties. The settlement attorney or other person conducting the settlement shall receive a copy of this Agreement as his or her instructions.

Sometime before 1997, the decedent missed several mortgage payments on the Colorado property. On November 27, 1997, plaintiff executed a quitclaim deed in favor of the decedent conveying her entire interest in the Colorado property. This was done to remove her from the mortgage to avoid financial responsibility for the property and to allow the decedent to refinance. Sometime around 2000, the decedent further encumbered the property with mortgage debt.

On November 12, 2003, the decedent conveyed his entire interest in the Colorado property to his new wife, defendant Marta DiMeglio, by quitclaim deed. He executed a second quitclaim deed in favor of Marta on

August 30, 2004. On that same day, Marta conveyed the property to a third-party buyer by general warranty deed for consideration of $215,000. The proceeds from the sale were used in a § 1031 "like-kind" exchange[1] in which Marta purchased real property in Eaton Rapids, Michigan.

The decedent died on November 12, 2011. Plaintiff filed a claim against his estate that Marta, as personal representative, denied. Plaintiff then filed her eight-count complaint in the probate court against the decedent's estate and Marta as personal representative of the estate and individually. The complaint alleged breach of contract, breach of a covenant of good faith and fair dealing, conversion, statutory conversion, concert of action, fraud, enforcement of the divorce judgment, and unjust enrichment.

Marta moved for summary disposition under MCR 2.116(C)(7), (8), and (10). The probate court granted summary disposition under MCR 2.116(C)(8) and (10) to Marta in her individual capacity because she was not a party to the property settlement agreement and had no personal liability for any of the claims. The probate court further granted summary disposition under MCR 2.116(C)(7) to Marta in both capacities, finding that the six-year statutory period of limitations for contract claims had run. On appeal, plaintiff only contests the probate court's finding that the statute of limitations for contract claims barred all of plaintiff's claims,

---

[1] Like-kind exchanges are provided for in § 1031 of the Internal Revenue Code:

> No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property of like kind which is to be held either for productive use in a trade or business or for investment. [26 USC 1031(a)(1).]

including, in particular, the claims for enforcement of the divorce judgment and unjust enrichment provided for in Counts VII and VIII of her complaint, respectively.

We review de novo a trial court's decision to grant or deny summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Whether a defendant is entitled to governmental immunity is a question of law, which we also review de novo. *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004). "A motion under MCR 2.116(C)(7) tests whether a claim is barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties." *Diamond v Witherspoon*, 265 Mich App 673, 681; 696 NW2d 770 (2005) (quotation marks and citations omitted). "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119.

At the outset, with regard to plaintiff's claim for enforcement of the divorce judgment in Count VII of her complaint, plaintiff argues that Virginia substantive law regarding incorporation of property settlements should apply because the judgment is a Virginia divorce decree that provided for incorporation. Michigan has adopted the Uniform Enforcement of Foreign Judgments Act, MCL 691.1171 *et seq.*, which provides in pertinent part,

> A copy of a foreign judgment authenticated in accordance with an act of congress or the laws of this state may be filed in the office of the clerk of the circuit court, the district court, or a municipal court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court, the district court, or a municipal court of this state. A judgment filed under this act has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating,

> or staying as a judgment of the circuit court, the district court, or a municipal court of this state and may be enforced or satisfied in like manner. [MCL 691.1173.]

Because the divorce judgment was filed in accordance with this act, the judgment is treated as a Michigan judgment and Michigan law applies to its enforcement.

Statutes of limitations are found at Chapter 58 of the Revised Judicature Act (RJA), MCL 600.5801 *et seq.* MCL 600.5807(8) provides a six-year statutory period of limitations for ordinary breach-of-contract claims. Plaintiff, however, argues that claims to enforce a judgment are classified as "noncontractual money obligations" that carry a 10-year statutory period of limitations pursuant to MCL 600.5809, which provides in pertinent part,

> (1) A person shall not bring or maintain an action to enforce a noncontractual money obligation unless, after the claim first accrued to the person or to someone through whom he or she claims, the person commences the action within the applicable period of time prescribed by this section.
>
>        *    *    *
>
> (3) Except as provided in subsection (4),[2] the period of limitations is 10 years for an action founded upon a judgment or decree rendered in a court of record of this state, or in a court of record of the United States or of another state of the United States, from the time of the rendition of the judgment or decree.

In *Gabler v Woditsch*, 143 Mich App 709; 372 NW2d 647 (1985), we directly addressed the issue of which statute of limitations applies in this context. The Court stated:

---

[2] MCL 600.5809(4) addresses actions to enforce support order that are enforceable under the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq.*

The present action is an action to enforce the provisions of the 1968 divorce judgment and is therefore an action founded upon a judgment within RJA § 5809(3). Plaintiff's claim is not converted into a breach of contract action merely because the specific payment provision which he seeks to enforce was contained in a property settlement agreement. *That agreement was expressly incorporated by reference into the divorce judgment.* The trial court correctly applied the ten-year period in RJA § 5809(3). [*Id.* at 711 (emphasis added).]

Thus, according to *Gabler,* because plaintiff and the decedent's property settlement, which plaintiff seeks to enforce, was expressly incorporated by reference into the divorce judgment, the action is "founded upon a judgment within" MCL 600.5809(3) and the 10-year period of limitations would apply.

Defendant, however, persists in arguing that the provisions of the property settlement can only be enforced in an action for breach of contract and not in an action to enforce a judgment. In support of this argument, defendant relies on the following language in *Marshall v Marshall,* 135 Mich App 702, 712-713; 355 NW2d 661 (1984):

In the within case, the divorce judgment incorporated the parties' property settlement agreement by reference, but specifically provided that the property settlement agreement was not merged in the divorce judgment. When a property settlement agreement is incorporated and merged in a divorce judgment, it becomes a disposition by the court of the property. *But, when not merged in the divorce judgment, the property settlement agreement may only be enforced by resort to the usual contract remedies and not as part of the divorce judgment.*

Thus, in the within case, by providing that the property settlement agreement was not merged in the divorce judgment, the parties lifted enforcement out from under GCR 1963, 528.3 [the former court rule governing relief from

judgment]. This analysis does not, however, aid plaintiff because, for the reasons indicated, we have already declined to find ambiguity, and thus find that the trial court lacked inherent power to interpret and clarify the terms of the property settlement agreement. [Emphasis added.]

The italicized language, however, is ambiguous. The language appears to provide one outcome when an agreement is incorporated *and* merged, and the opposite outcome when the agreement is not merged. *Marshall* does not specifically address the third possible situation, in which the agreement is incorporated but not merged. It is unclear whether the Court confused the terms "merged" and "incorporated" or whether it wished to create a rule that nonmerger precludes enforcement of the agreement as a judgment. Further, this language appeared in the opinion after the Court stated its holding. The Court made it clear that this analysis did not aid the plaintiff because it had already determined that the trial court could not interpret the property settlement agreement. Therefore, it is clear that this language was not "germane to the controversy in the case" and was therefore dictum that is not binding on this Court. *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007).

We find defendant's argument unpersuasive, and we reaffirm the principle of law in *Gabler* that incorporation by reference into a divorce judgment makes a property settlement agreement enforceable as a judgment to which the 10-year statutory period of limitations, MCL 600.5809(3), applies. In doing so, we note that our holding is consistent with the meaning of the terms "incorporation by reference" and "merger" and respects the intent of parties. "Incorporation by reference" means "[a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary

document should be treated as if it were contained in the primary one." *Black's Law Dictionary* (9th ed), p 834. "Merger," as used in this context, is defined as "[t]he absorption of a contract into a court order, so that an agreement between the parties (often a marital agreement incident to a divorce or separation) loses its separate identity as an enforceable contract when it is incorporated into a court order." *Id.* at 1079. When the parties to a divorce agree, through their attorneys, to incorporate the terms of a property settlement agreement by reference and specifically agree not to merge the agreement into a judgment, it could be assumed that the attorneys and the court that enters the judgment understand the definitions of "merger" and "incorporation by reference." The clear intent of parties entering into such an agreement would be to make the agreement enforceable both as a court order and as an ordinary contract.

Applying *Gabler* to this case, we conclude that the property settlement agreement is enforceable as a judgment because it was incorporated, rather than merged, into the divorce judgment. Therefore, the probate court erred by applying the 6-year statutory period of limitations for breach-of-contract claims to plaintiff's claim to enforce the divorce judgment and should have applied the 10-year statutory period of limitations for noncontractual money obligations pursuant to MCL 600.5809(3). Because plaintiff sought enforcement of the provision requiring the decedent to pay plaintiff half of the proceeds from the 2004 sale of the Colorado property, her cause of action for that claim accrued in 2004 when the property was sold and the decedent failed to pay plaintiff half of the proceeds. Therefore, plaintiff timely filed her complaint in 2012 pursuant to MCL 600.5809(3).

Plaintiff also argues that her claim for unjust enrichment in Count VIII of her complaint should not have been barred by the six-year statutory period of limitations for breach-of-contract claims. Defendant argues that a claim for unjust enrichment cannot be sustained when an express contract on the same subject matter exists. Defendant is correct that "the law operates to imply a contract in order to prevent unjust enrichment" and that this will not occur if there is already an express contract on the same subject matter. *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). Count VIII of the complaint, however, goes beyond a claim for breach of contract. Plaintiff alleges not only that the estate owes her for the decedent's breach, but that Marta was unjustly enriched when she retained the funds from the sale of the Colorado property. This is a purely equitable claim that is not covered by any express contract of the parties. Because the claim is not based on an analogous legal claim, the breach-of-contract statute of limitations does not apply. *Lothian v Detroit*, 414 Mich 160, 170; 324 NW2d 9 (1982). If the claim for unjust enrichment were time-barred, it would be under the equitable doctrine of laches. *Id.* "As a general rule, '[w]here the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot * * * be recognized.' " *Id.* at 168, quoting *Walker v Schultz*, 175 Mich 280, 293; 141 NW 543 (1913). On remand, the probate court should determine whether laches bars the claim for unjust enrichment.

Accordingly, we hold that the probate court erred by granting summary disposition to defendant as to plaintiff's Count VII (enforcement of the divorce judgment) and Count VIII (unjust enrichment).

With regard to defendant's cross-appeal challenging the probate court's denial of her motion for attorney fees, we conclude that the probate court's interpretation of the contractual language in the property settlement agreement providing for attorney fees is overly narrow. Contrary to the probate court's determination, a contract provision providing for attorney fees is a valid exception to the American rule regarding attorney fees. *Grace v Grace*, 253 Mich App 357, 370-371; 655 NW2d 595 (2002). A commonsense reading of ¶ 31, the relevant provision of the property settlement agreement, is that "reasonable costs incurred by a party in the successful defense to any action for enforcement of any of the agreements, covenants, or provisions of [the property settlement agreement]" would include attorney fees regardless of which party prevails. We decline to reverse the probate court's order, however, because given our disposition of plaintiff's appeal, defendant no longer has a "successful defense" under the contractual language, unless and until the probate court holds in defendant's favor on the merits. *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

CAVANAGH, P.J., and OWENS and STEPHENS, JJ., concurred.